# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

Nº 13-CV-1858 (JFB)

---

CHERYL NEGER,

Plaintiff,

VERSUS

CAROLYN COLVIN, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**MEMORANDUM AND ORDER**
August 5, 2014

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Cheryl Neger ("Neger" or "plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), challenging the final decision of the Commissioner of Social Security ("Commissioner"), dated April 12, 2012, denying plaintiff's application for disability insurance benefits beginning on August 30, 2009, through the present. An Administrative Law Judge ("ALJ") found that plaintiff's fibromyalgia did not preclude her from performing her past relevant work as a circulation manager at a warehouse. The Appeals Council denied Neger's request for review. The Commissioner now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings or, in the alternative, a remand. She argues that the ALJ erred by failing to accord the proper weight to the opinion of plaintiff's treating physician, and, relatedly, failing to re-contact the treating physician before assessing the weight of that opinion.

For the reasons set forth below, the Court grants the Commissioner's motion for judgment on the pleadings, affirms the decision of the ALJ, and denies plaintiff's cross-motion. Specifically, the Court concludes that the ALJ did not err in giving minimal weight to the opinion of the treating physician, Dr. Myles I. Rosenthal, whose medical assessment of plaintiff on December 27, 2011, was not well-supported by objective medical evidence and was inconsistent with the substantial medical evidence of record.

I. BACKGROUND

A. Factual Background

The following summary of the relevant facts is based upon the Administrative Record ("AR") developed by the ALJ. A more exhaustive recitation of the facts is

contained in the parties' submissions to the Court and is not repeated herein.

1. Plaintiff's Personal History

Plaintiff was born in 1956 and has a high school education. (AR 98, 117.) From September 1974 to June 2007, she was employed as a circulation manager at a vitamin manufacturer. (*Id.* at 118, 124.) Her duties included updating computer programs, monitoring sales and workflow, and creating advertising and marketing campaigns. (*Id.* at 125.) During the course of a workday, plaintiff walked for three hours, stood for one hour, and sat for three hours. (*Id.*) She lifted less than ten pounds. (*Id.*) She finally stopped working for her employer on August 30, 2009, the alleged onset date of her disability. (*Id.* at 43.)

According to a function report dated May 16, 2011 (*see id.* at 132–44), plaintiff lives in a house with her family. (*Id.* at 132.) She has no problems dressing and bathing, but takes frequent breaks drying her hair, because she has difficulty holding up the dryer. (*Id.* at 133.) She prepares meals daily for herself and her husband using a slow cooker, feeds her pet, cleans, does laundry, and performs light outdoor maintenance. (*Id.* at 133–35.) In addition, although plaintiff needs help lifting bags, she shops in stores, by mail, and by computer; shops for food once weekly, which takes approximately one and one-half hours; goes out "most days" and either drives or rides in a car; and is able to travel alone. (*Id.* at 135–36.) Plaintiff's interests include browsing the Internet, reading, watching television, gardening, walking, and going to garage sales. (*Id.* at 136.) She also attends family functions and meets friends for coffee, but, because of her worsening symptoms over the past five years, she does not commit to social activities on a regular basis. (*Id.* at 137.)

According to the function report, lifting items weighing over ten pounds exacerbates symptoms in plaintiff's upper body. (*Id.* at 137.) She has no problems sitting and does not believe that standing is affected by her condition. (*Id.* at 137–38.) Although she can walk, she needs to rest for five minutes after walking five hundred feet. (*Id.* at 138–39.) She has no problems kneeling and using her hands, but cannot "over reach." (*Id.* at 138.) Squatting hurts her upper buttock muscles, while stress affects her neck muscles and causes nausea and perhaps headaches. (*Id.* at 140.) Plaintiff described her pain as "mostly [an] ache"; she feels it in the back of her head and neck, major pectoralis muscles, chest, thighs, inside knees, elbows, and muscles in upper buttocks. (*Id.* at 140–41.) Pain occurs every day, with no triggers, and lasts until she falls asleep. (*Id.* at 141.) She also has headaches four to five times per week. (*Id.* at 143.)

2. Plaintiff's Medical History

a. Evaluations by Treating Physician Dr. Myles Rosenthal

Dr. Myles I. Rosenthal ("Dr. Rosenthal") has been treating plaintiff since March 1994, seeing her every three to four months. (*Id.* at 214.) The record contains, *inter alia*, treatment records from Dr. Rosenthal covering the period from September 10, 2010, through April 5, 2011 (*id.* at 159–76), and a medical assessment by Dr. Rosenthal dated December 27, 2011. (*Id.* at 214–18.)[1]

Dr. Rosenthal saw plaintiff on September 10, 2010, for fibromyalgia and elevated cholesterol. (*Id.* at 171, 176.) Plaintiff reported symptoms of bilateral

---

[1] In her motion, plaintiff focuses on Dr. Rosenthal's December 27, 2011 evaluation. (*See* Pl. Brief, at 4–7, 14–16.) That evaluation does not address plaintiff's symptoms from August 30, 2009, onward. There are no medical records in the AR dated before 2010.

tenderness, on and off, which was confirmed through an examination (*Id.* at 171.) Dr. Rosenthal's assessment was: (1) fibromyalgia stable, (2) bilateral tenderness, and (3) hypercholesterolemia. (*Id.*) He prescribed Simvastatin and Elavil, and directed plaintiff to return in one month for blood testing. (*Id.* at 176.) Blood testing, carried out on October 21, 2010, showed all results to be within reference range. (*Id.* at 169–70.) On November 23, 2010, Dr. Rosenthal renewed the Elavil prescription. (*Id.* at 168.) The medical records do not indicate that Dr. Rosenthal concluded plaintiff was disabled at this time.

Dr. Rosenthal next saw plaintiff on February 14, 2011, for a cholesterol check and medication refills. (*Id.* at 164, 167.) She had a sore throat and complained of aching all over, on and off. (AR 164.) The neurological examination was negative, except for sluggish deep tendon reflexes. (*Id.*) Dr. Rosenthal's assessment was: (1) hypercholesterolemia, (2) fibromyalgia, (3) no cardiovascular disease, and (4) no hypothyroidism. (*Id.*) Blood work done that day revealed, *inter alia*, an elevated amount of thyroid stimulating hormone ("TSH"), but cholesterol levels were within reference range. (*Id.* at 165.) On February 22, 2011, Dr. Rosenthal prescribed Synthroid and instructed plaintiff to repeat TSH testing in six weeks. (*Id.* at 162–63.) He did not conclude that plaintiff was disabled.

Plaintiff returned to Dr. Rosenthal on April 5, 2011, to follow-up regarding hypothyroidism. (*Id.* at 159, 161.) She stated that she "feels fine in all ways." (*Id.* at 159.) She noted, however, that she did have intermittent fibromyalgia symptoms. (*Id.*) Dr. Rosenthal's assessment was euthryoid (normal thyroid function) on medication. (*Id.*) Blood testing revealed a low TSH level. (*Id.* at 160.) Dr. Rosenthal did not conclude that plaintiff was disabled.

On December 27, 2011, Dr. Rosenthal completed a medical assessment questionnaire regarding plaintiff. (*Id.* at 214–18.)[2] Dr. Rosenthal wrote that he had seen plaintiff every three to four months since 1994 for multiple musculoskeletal complaints, hypercholesterolemia, and hypothyroidism. (*Id.* 214.) He noted plaintiff's prognosis as "chronic long term – guarded." (*Id.*) Her TSH and cholesterol levels were "normalized" with medication. (*Id.*) Dr. Rosenthal stated that no blood tests or radiologic tests identify fibromyalgia. (*Id.*) He indicated that plaintiff's symptoms consist of multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent and severe headaches, numbness and tingling, and hypothyroidism (controlled on medication). (*Id.*) He stated that no emotional factors have contributed to the severity of plaintiff's symptoms and functional limitations. (*Id.*) He further noted that plaintiff complained of point tenderness bilaterally in the chest, hips, and knees, ankles, and feet. (*Id.* at 215.) Changing weather, movement and overuse, the cold, and remaining in a static position precipitated her pain. (*Id.*) Symptoms frequently were severe enough to interfere with her attention and the concentration required to perform even simple work tasks. (*Id.*)

Dr. Rosenthal thus concluded that: (1) plaintiff was incapable of even "low stress" jobs; (2) plaintiff was limited to walking two blocks without rest or severe pain; (3) plaintiff could sit thirty minutes at a time, and stand for ten minutes at a time; (4) during the course of an eight-hour workday, plaintiff could sit and stand or walk for fewer than two hours; would require at least thirty minutes of walking during the day;

---

[2] The AR includes no treatment records from Dr. Rosenthal dated after April 5, 2011.

3

and would require multiple unscheduled breaks to lie down during the day, each lasting ten minutes on average; (5) plaintiff could rarely lift and carry less than ten pounds or climb stairs, and never twist, crouch, or climb ladders; (6) plaintiff could occasionally look down, turn her head in either direction, and look up, but rarely could hold her head in a static position; (7) plaintiff was limited to using her fingers for fine manipulations twenty-five percent of the day, and using her hands to grasp, turn, or twist objects ten percent of the day; (8) plaintiff could never use her arms to reach; and (9) plaintiff would be absent from work due to her impairments more than four days per month. (*Id.* at 215–16.)

b. Consulting Physicians

i. Andrea Pollack, D.O.

Andrea Pollack, D.O. ("Dr. Pollack"), conducted a consultative internal medicine examination on June 8, 2011. (*Id.* at 177–80.) Plaintiff related a history of fibromyalgia since age twenty-two, which went into remission and returned in 1997, as well as high cholesterol for two years and hypothyroidism for at least one year. (*Id.* at 177.) She primarily complained of neck, low back, and leg pain, which was intermittent and burning and sore to the touch. (*Id.*) She also stated that she suffered from migraine headaches twice a week for hours, with a throbbing pain and minimal relief from medication, and she described a pressure affecting her right anterior chest wall more than the left. (*Id.*) Her current medications were Elavil, Flexeril, Simvastatin, Synthroid, and Ibuprofen. (*Id.* at 178.) She stated that she lives with her husband, cooks five days a week, cleans as tolerated, can shower and dress daily, goes out, and runs errands. (*Id.* at 178.)

On examination, plaintiff weighed 170 pounds and appeared in no acute distress. (*Id.*) Her gait was normal. (*Id.*) Although she declined to walk on her heels and toes, she squatted fully, had a normal stance, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and rose from the chair without difficulty. (*Id.*) Examination of the cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.* at 179.) There was no scoliosis, kyphosis, or abnormality in the thoracic spine, and the lumbar spine exhibited full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*) Straight leg raising was positive in the supine position bilaterally to 60 degrees, but the seated positive test was negative. (*Id.*) Plaintiff had full range of motion of the shoulders, elbows, forearms, wrists bilaterally, hips, knees, and ankles bilaterally. (*Id.*) Joints were stable and non-tender, and there was no swelling, redness, heat, or effusion. (*Id.*) She did, however, have fibromyalgia tender points at the knees bilaterally, anterior chest wall bilaterally, and trapezius bilaterally. (*Id.*) Deep tendon reflexes were physiologic and equal in both upper and lower extremities. (*Id.*) There were no sensory deficiencies, strength was 5/5 in the upper and lower extremities, and no muscle atrophy was evident. (*Id.*) Hand and finger dexterity was intact, and grip strength also was 5/5. (*Id.* at 180.)

Dr. Pollack diagnosed fibromyalgia, migraines, costochondritis, hyperlipidemia, and hypothyroidism. (*Id.*) She opined that plaintiff should avoid heights, activities requiring heavy exertion, and operating heavy machinery. (*Id.*) Dr. Pollack stated that plaintiff had a moderate restriction in lifting, carrying, pushing, and pulling. (*Id.*)

ii. Kathleen Acer, Ph.D.

Kathleen Acer, Ph.D. ("Dr. Acer"), conducted a consultative psychiatric

4

evaluation on June 8, 2011. (*Id.* at 181–84.) Plaintiff drove herself unaccompanied to the evaluation. (*Id.* at 181.) She denied having any significant symptoms associated with major depressive, anxiety-related, or formal thought disorders. (*Id.*) She also had a normal appetite. (*Id.*) Her gait was marked by shuffling and some limping, but her motor behavior was normal. (*Id.*) Her eye contact was appropriately focused, she spoke fluently and clearly, and her thought process was coherent and goal-directed. (*Id.*) According to Dr. Acer, plaintiff reported that she can dress, bathe, and groom herself, cook, clean, do laundry, and shop. (*Id.*) She stated that she spends her days running errands, watching television, and doing household chores. (*Id.*) Dr. Acer concluded that, vocationally, plaintiff could follow and understand simple instructions and directions, appropriately perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, adequately relate with others, and deal with stress. (*Id.* at 183.)

3. The Administrative Hearing

Plaintiff testified at the hearing before the ALJ on March 29, 2012. (*Id.* at 27–41.) She testified that she is unable to work because of "varying degrees of widespread pain and headaches," which prevent her from engaging in a normal daily routine. (*Id.* at 28.) According to plaintiff, the primary site of her fibromyalgia is her neck, and it causes headaches and nausea most of the day. (*Id.* at 29.) Taking Motrin and sitting still takes the edge off the headaches. (*Id.* at 36.) Muscle spasms in her right eye and top of her head are sometimes accompanied headaches, and if the Motrin is ineffective, she uses a muscle relaxer. (*Id.* at 30–31.)

In describing her day, plaintiff stated that, after waking up, she has tea, straightens up the house, watches television, and checks her email. (*Id.* at 32.) Plaintiff testified that she did "light cooking" and uses a crockpot to prepare meals, and that she could not do repetitive tasks, such as dusting, vacuuming, or ironing. (*Id.*) Her husband helped with all the chores. (*Id.*) Plaintiff helped with washing dishes or doing laundry, went food shopping a few times per week, and could probably carry two five-pound bags of potatoes if she had them in her arms. (*Id.* at 34.) Plaintiff testified that sitting could be a problem, and she estimated that she could sit for between ten minutes and one-half hour at a time. (*Id.*) She was limited to walking for about ten minutes, and could stand for only two to three minutes at a time. (*Id.* at 34–35.) Plaintiff drove about once a week, to do errands or go to the doctor. (*Id.* at 39.)

B. Procedural History

On April 19, 2011, plaintiff applied for disability insurance benefits, alleging disability as of August 30, 2009, due to fibromyalgia and chronic fatigue syndrome. (*Id.* at 96–104, 117.) After the application was denied, plaintiff requested a hearing and appeared, represented by counsel, before the ALJ on March 29, 2012. (*Id.* at 23–42.) On April 12, 2012, the ALJ issued a decision concluding that plaintiff was not disabled. (*Id.* at 9–22.) The Appeals Council denied the request for review on March 11, 2013.

Plaintiff commenced this action on May 7, 2013, appealing the ALJ's April 12, 2012 decision. The Commissioner answered on September 9, 2013, and moved for judgment on the pleadings on December 2, 2013. Plaintiff filed her motion for judgment on the pleadings on December 31, 2013. The Commissioner replied on January 17, 2014. The matter is fully submitted.

5

## II. STANDARD OF REVIEW

A district court may set aside a determination by an ALJ "only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in Social Security cases to mean "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted); *see Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). Furthermore, "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (internal citation and quotation marks omitted); *see also Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

In order to obtain a remand based on additional evidence, a plaintiff must present new evidence that: "(1) is 'new' and not merely cumulative of what is already in the record[;]" (2) is material, in that it is "relevant to the claimant's condition during the time period for which benefits were denied," probative, and presents a reasonable possibility that the additional evidence would have resulted in a different determination by the Commissioner; and (3) was not presented earlier due to good cause. *Lisa v. Sec'y of the Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

## III. DISCUSSION

### A. Legal Standard

A claimant is entitled to disability benefits if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the SSA unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the

6

claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with respect to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "'(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.'" *Id.* (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

### B. Analysis

Plaintiff argues that the ALJ's decision is the result of legal error because the ALJ did not follow the treating physician rule when he discounted the records and findings of Dr. Rosenthal. As set forth below, the Court concludes that the ALJ gave sufficient reasons for his decision not to give controlling weight to Dr. Rosenthal's opinion. Further, sufficient evidence supports the ALJ's determination that plaintiff was not disabled.

#### 1. The ALJ's Decision

In concluding that plaintiff was not disabled under the SSA, the ALJ adhered to the five-step sequential analysis for evaluating applications for disability benefits. (*See* AR 12–19.)

##### a. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity is work activity that involves doing significant physical or mental activities," *id.* § 404.1572(a), and gainful work activity is work usually done for pay or profit, *id.* § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. In this case, the ALJ determined that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of August 30, 2009. (AR 14.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

##### b. Severe Impairment

If the claimant is not employed, the ALJ then determines whether the claimant has a "severe impairment" that limits his capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez*, 77 F.3d at 46. Here, the ALJ stated that plaintiff had the severe impairment of fibromyalgia, *see* 20 C.F.R. § 404.1520(c). (AR 14.) The ALJ further stated that plaintiff's medically determinable mental impairment of depression was non-severe. (*Id.*) Substantial evidence supports these findings, and plaintiff does not challenge their correctness.

7

### c. Listed Impairment

If the claimant has a severe impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(d). In this case, the ALJ found that plaintiff's impairments did not meet any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 15.) Substantial evidence supports this finding, and plaintiff does not challenge its correctness.

### d. Residual Functional Capacity

If the severe impairments do not meet or equal a listed impairment, the ALJ assesses the claimant's residual functional capacity "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). The ALJ then determines at step four whether, based on the claimant's residual functional capacity, the claimant can perform her past relevant work. *Id.* § 404.1520(f). When the claimant can perform her past relevant work, the ALJ will find that she is not disabled. *Id.*

In this case, the ALJ found that Neger "has the residual functional capacity to sit and to stand/walk six hours each in an eight-hour workday and lift/carry up to twenty pounds, which is the full range of light work as defined in CFR 404.1567(b)."[3] (AR 15.) He reasoned that Neger's claims regarding her symptoms and limitations were not corroborated by objective medical evidence. Specifically, the ALJ noted that the evidence in the record of treatment from Dr. Rosenthal primarily focused on blood work and hypothyroidism; he highlighted that, in February 2011, plaintiff complained of feeling achy all over, on and off, but had no specific complaints; and he highlighted that, on April 5, 2011, plaintiff reported that she "feels fine in all ways." (*Id.* at 16.) Among other things, the ALJ then summarized Dr. Rosenthal's December 2011 report and concluded that Dr. Rosenthal's opinion "is not consistent with the limited treatment records, which do not document clinical signs or diagnostic tests consistent with the opinion offered. In addition, the treatment records only contain a few vague references to subjective complaints of achiness." (*Id.* at 16 (emphasis in original).) The ALJ explained that "there are no limitations or restrictions contained in the treatment record that are consistent with the opinion offered." (*Id.*) The ALJ thus accorded little weight to Dr. Rosenthal's opinion. The ALJ, however, accorded "considerable weight" to the opinions of Drs. Pollack and Acer. He reasoned that both opinions are "consistent with the examination and the treatment records." (*Id.* at 17.) The ALJ also noted that plaintiff reported that she can do a wide range of activities of daily living. (*Id.*) In conclusion, the ALJ reasoned that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.*)

For the reasons set forth *infra*, the Court discerns no legal errors in connection with the ALJ's assessment of plaintiff's residual functional capacity, and, thus, no reversal or

---
[3] The Court also notes that, "in the Social Security context, a person must be able to lift ten pounds occasionally, sit for a total of six hours, and stand or walk for a total of two hours in an eight-hour workday to be capable of 'sedentary work.'" *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 n.3 (2d Cir. 1999); 20 C.F.R. § 404.1567(a)).

remand is necessary, because substantial evidence supports the decision.

### e. Other Work

At step five, the ALJ concluded that plaintiff was capable of performing her past relevant work as a circulation manager in a warehouse, which, he reasoned, "does not require the performance of work-related activities precluded by [her] residual functional capacity." (AR 17.)

The ALJ also considered whether plaintiff was capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the Commissioner has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. *Id.* § 404.1560(c); *see, e.g.*, *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Here, the ALJ found that (1) the work was performed for a long enough period to learn and provide average performance, and at substantial gainful activity levels; (2) plaintiff has the capacity to perform the full range of light exertional work; and (3) other jobs exist in the national economy that she is also able to perform. (AR 18.) The ALJ also considered plaintiff's age, education, work experience, and residual functional capacity, in connection with the Medical-Vocational Guidelines set forth at Appendix 2 of Part 404, Subpart P of Title 20 of the Code of Federal Regulations, and found that, since August 2009, there was work in the national economy which plaintiff could perform, based on Medical-Vocational Rule 202.21. (AR 18.)

Plaintiff challenges the correctness of this conclusion to the extent it is based on the alleged failure to properly weigh Dr. Rosenthal's opinion.

### 2. Treating Physician Rule

Plaintiff argues the ALJ failed to accord the proper weight to her treating physician, Dr. Rosenthal. The Court disagrees.

### a. Legal Standard

The Commissioner must give special evidentiary weight to the opinion of a treating physician. *See Clark*, 143 F.3d at 118. The "treating physician rule," as it is known, "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *see, e.g.*, *Rosa*, 168 F.3d at 78–79; *Clark*, 143 F.3d at 118. The rule, as set forth in the regulations, provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

9

Although treating physicians may share their opinion concerning a patient's inability to work and the severity of disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner." *Id.* § 404.1527(d)(1); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.").

When the Commissioner decides that the opinion of a treating physician should not be given controlling weight, she must "give good reasons in [the] notice of determination or decision for the weight [she] gives [the claimant's] treating source's opinion." 20 C.F.R § 404.1527(c)(2); *see Perez v. Astrue*, No. 07-CV-958 (DLI), 2009 WL 2496585, at *8 (E.D.N.Y. Aug. 14, 2009) ("Even if [the treating physician's] opinions do not merit controlling weight, the ALJ must explain what weight she gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician."); *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y 2006) ("Even if the treating physician's opinion is contradicted by substantial evidence and is thus not controlling, it is still entitled to significant weight because the treating source is inherently more familiar with a claimant's medical condition than are other sources." (internal citation and quotation marks omitted)). Specifically, "[a]n ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

"Furthermore, the ALJ has the duty to 'recontact' a treating physician for clarification if the treating physician's opinion is unclear." *Stokes v. Comm'r of Soc. Sec.*, No. 10-CV-0278 (JFB), 2012 WL 1067660, at *11 (E.D.N.Y. Mar. 29, 2012) (quoting *Ellett v. Comm'r of Soc. Sec.*, No. 1:06–CV–1079 (FJS), 2011 WL 1204921, at *7 (N.D.N.Y. Mar. 29, 2011)); *see also Mitchell v. Astrue*, No. 07 Civ. 285(JSR), 2009 WL 3096717, at *17 (S.D.N.Y. Sept. 28, 2009) ("If the opinion of a treating physician is not adequate, the ALJ must 'recontact' the treating physician for clarification." (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). Such an obligation is linked to the ALJ's affirmative duty to develop the record.[4] *See Perez*, 77 F.3d at 47.

b. Analysis

Plaintiff argues that Dr. Rosenthal's opinion that plaintiff is disabled should be controlling. However, "a treating physician's statement that the claimant is disabled cannot itself be determinative." *See*

---

[4] It is well established that the ALJ must "'[a]ffirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). The ALJ's regulatory obligation to develop the administrative record exists even when the claimant is represented by counsel or by a paralegal at the hearing. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

*Snell*, 177 F.3d at 133. The opinion must be supported by clinical and diagnostic tests, and it must not be inconsistent with other aspects of the record. *E.g.*, *Losquadro v. Astrue*, No. 11-CV-1798 (JFB), 2012 WL 4342069, at *10 (E.D.N.Y. Sept. 21, 2012); *see also* 20 C.F.R. §§ 404.1527(c)(2), (d)(2). In this case, the ALJ discussed the lack of clinical and diagnostic tests to support Dr. Rosenthal's opinion, and the ALJ further highlighted other medical evidence that was inconsistent with Dr. Rosenthal's assessment.[5]

For instance, the ALJ noted that Dr. Rosenthal's treatment records only contain vague references to subjective complaints of achiness, instead of specific findings with respect to plaintiff's fibromyalgia. (AR 16.) In fact, none of the records from Dr. Rosenthal indicate that he prescribed specific medications or treatment to address this condition. The September 2010 evaluation assessed the fibromyalgia as stable (*id.* at 171), and the subsequent records do not indicate any changes to that condition (*see id.* at 159–67). Thus, the ALJ ignored no diagnostic tests by Dr. Rosenthal that supported his assessment, or inconsistencies in his findings, which could be grounds for remand. *See Reyes v. Barnhard*, 226 F. Supp. 2d 523, 529–30 (S.D.N.Y. 2002); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (If the ALJ "perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.").

It is true that an ALJ cannot reject a treating physician's opinion on the sole basis that it conflicts with the physician's own clinical findings. *See Balsamo*, 142 F.3d at 80. Here, however, the ALJ also rejected Dr. Rosenthal's opinion because it conflicted with other significant medical evidence. Specifically, the ALJ gave considerable weight to the medical reports of Dr. Pollack and Dr. Acer, who concluded that plaintiff was not disabled and was capable of performing her previous work (or any sedentary work). The ALJ reasoned that their reports were consistent with and supported by the examination and the record as a whole. (AR 17.) For instance, Dr. Pollack observed that plaintiff walked with a normal gait, could fully squat, and had a normal stance. (*Id.* at 179.) Based on her examination, Dr. Pollack opined that plaintiff would have only moderate restrictions in lifting, carrying, pushing, and pulling, and that she should avoid heights and activities that require heavy exertion or operating heavy machinery.[6] (*Id.* at 180.) Just two months earlier, plaintiff had told Dr. Rosenthal that she "feels fine in all ways," and there is no medical evidence in the record indicating that her symptoms

---

[5] The Court notes that, in her brief, plaintiff does not point to Dr. Rosenthal's treatment findings in making her argument. Instead, she claims that the findings from Pollack's examination indicate that the ALJ should have given more weight to Dr. Rosenthal's opinion. (*See* Pl. Brief, at 14.)

[6] Plaintiff claims the findings of the other doctors (*e.g.*, plaintiff's positive straight leg raising test) are "at odds with the conclusion that ALJ made stating that there were no clinical signs in the limited treatment records that would support Dr. Rosenthal's opinion." (Pl. Brief, at 14.) According to plaintiff, "[w]hile the limited treatment records do not contain clinical or laboratory findings, the consultative evaluation did indicate several positive clinical findings that would substantiate the functional restrictions as established by Dr. Rosenthal." (*Id.*) As the Commissioner points out, however, pursuant to the applicable regulations, "[a]lternative testing methods should be used to verify the abnormal findings, e.g., a seated straight-leg raising test in addition to a supine straight-leg raising test." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 1.00(D). Here, plaintiff's positive straight leg raising test was negative in the seated position. (AR 179.)

significantly worsened after that evaluation. (*Id.* at 159.) Plaintiff's testimony during the administrative hearing also generally was consistent with her statements in the function report and to Dr. Pollack and Dr. Acer, indicating that no significant changes in her condition developed during mid-to-late 2011 and that she was capable of performing light work.[7]

In sum, the Court concludes that the ALJ properly considered all of the evidence and explained in detail the basis for his findings. The ALJ properly disregarded Dr. Rosenthal's opinion and supported his decision to do so. *See Losquadro*, 2012 WL 4342069, at *10–11, 13 (finding that ALJ had provided sufficient and persuasive explanation for giving little weight to opinions of treating physicians where sufficient evidence supported ALJ's determination that diagnostic tests did not support treating physician's assessments, and other consulting physicians' opinions were inconsistent with conclusions of treating physicians). Further clarification would not have assisted the ALJ in making the disability determination. Accordingly, because there was substantial evidence to support the ALJ's conclusion that plaintiff was not disabled as of August 30, 2009, and that plaintiff was at least capable of performing sedentary work in the economy after that date, the ALJ's findings are not erroneous or contrary to law.

---

[7] Although plaintiff has not addressed this issue, the Court notes that it is unconvinced that the absence of any treatment records from June 2011 onwards constitutes a "clear gap" in the administrative record such that the ALJ had to seek additional information by, for instance, re-contacting Dr. Rosenthal. *Cf. Papadopoulos v. Astrue,* No. 10 Civ. 7980(RWS), 2011 WL 5244942, at *8 (S.D.N.Y. Nov. 2, 2011) ("Because 'further findings' would so plainly help to assure the proper disposition of [plaintiff's] claim, remand is appropriate in this case." (quoting *Pratts*, 94 F.3d at 39)).

## IV. CONCLUSION

For the foregoing reasons, the Court grants the Commissioner's motion for judgment on the pleadings, and denies plaintiff's cross-motion. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 5, 2014
Central Islip, NY

\*\*\*

Plaintiff is represented by Michael Brangan of Sullivan & Kehoe, 44 Main Street, Kings Park, NY 11754. The Commissioner is represented by Loretta E. Lynch, United States Attorney, Eastern District of New York, by Arthur Swerdloff, 271 Cadman Plaza East, 7th Floor, Brooklyn, NY 11201.